UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:17-CV-00040-HBB

ROY L. CREEK                                                                 PLAINTIFF

VS.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security                                    DEFENDANT

## MEMORANDUM, OPINION, AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Plaintiff Roy L. Creek seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 13) and Defendant (DN 14) have filed a Fact and Law Summary.

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 11). By Order entered May 16, 2017 (DN 12), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

### FINDINGS OF FACT

Plaintiff filed an application for Social Security Income and Disability Insurance Benefits on July 14, 2014 (Tr. 313, 323). Plaintiff alleged that he became disabled on September 28, 2012 as a result of chronic back pain, glaucoma, coronary artery disease, congestive heart failure,

high blood pressure, high cholesterol, COPD, diabetes, neuropathy pain in all extremities, sleep apnea, depression, anxiety, and difficulty concentrating and focusing (Tr. 351). Administrative Law Judge Richard Guida ("ALJ") conducted a video hearing on October 27, 2015 from Baltimore, Maryland. Plaintiff appeared remotely from Bowling Green, Kentucky and was represented by attorney Mary Burchett-Bower. Also present and testifying was impartial vocational expert Samuel Edelmann.

In a decision dated December 10, 2015, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 12-31). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since September 28, 2012, the alleged onset date (Tr. 17). At the second step, the ALJ determined that Plaintiff's coronary artery disease, hypertension, degenerative disc disease, degenerative joint disease, diabetes, neuropathy, carpal tunnel syndrome, depressive disorder, and borderline intellectual functioning are "severe" impairments within the meaning of the regulations (Tr. 17). Also at the second step, the ALJ determined that Plaintiff's glaucoma, sleep apnea, and COPD are "non-severe" impairments within the meaning of the regulations (Tr. 18). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 18).

At the fourth step, the ALJ found Plaintiff has the residual functional capacity to perform a limited range of light work (Tr. 19). More specifically, the ALJ assigned Plaintiff the following limitations:

> [H]e can only occasionally push or pull, cannot climb ladders, can occasionally climb stairs, balance, kneel, stoop, crouch, and crawl, can engage in frequent bilateral handling and fingering, requires the option to sit or stand at will without leaving the workstation,

>           and cannot have concentrated exposure to temperature extremes,
>           unprotected heights, and moving machinery. In addition, he is
>           limited to performing simple, routine tasks.

(Tr. 19). Relying on testimony from the vocational expert, the ALJ found that Plaintiff is unable to perform his past relevant work as a truck driver (Tr. 23).

The ALJ proceeded to the fifth step where he considered Plaintiff's residual functional capacity, age, education, and past work experience as well as testimony from the vocational expert (Tr. 23-24). The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Tr. 24). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from September 28, 2012 through the date of the decision (Tr. 24).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 9). The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-6).

CONCLUSIONS OF LAW

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir.

1993)).  In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."  Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-6).  At that point, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); see 42 U.S.C. § 405(h) (finality of the Commissioner's decision).  Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision.  42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities.  42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income).  The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

1993)).  In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."  Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-6).  At that point, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); see 42 U.S.C. § 405(h) (finality of the Commissioner's decision).  Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision.  42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities.  42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income).  The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. See "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step. For the reasons set forth below, the ALJ's decision is supported by substantial evidence, and Plaintiff's claim is denied.

## ARGUMENTS OF THE PARTIES

Plaintiff first alleges error at the second step, arguing the ALJ erred in failing to find Somatoform disorder to be a severe impairment (DN 13 at PageID # 1417-18). Plaintiff contends that Plaintiff's orthopedist, Dr. Singer, completed a medical source opinion that indicated severe somatic pain (Tr. 1258-61). Plaintiff contends that, because the ALJ did not account for the pain disorder when assessing Plaintiff's RFC, this case should be remanded so that the ALJ can properly account for the effects of the somatic disorder.

Defendant responds that Plaintiff has failed to prove the somatic disorder is a medically determinable impairment (Tr. 1429-30). Defendant argues that, while Dr. Singer's report

indicated a potential somatic disorder, it is the only reference to any such disorder in the entire record, and it is unsupported by any other objective findings. Additionally, Defendant points out a previous note by Dr. Singer indicating that Plaintiff suffered from facet joint disease and facet oriented pain, but observing that facet nerve blocks significantly relieved Plaintiff's symptoms (DN 14 at PageID 1430). Dr. Singer noted "exaggerated" pain at that visit, but he did not attribute those pain symptoms to a somatic pain disorder (Id.). Finally, Defendant notes that Plaintiff underwent a psychological evaluation but did not mention any sort of preoccupation with pain symptoms that might be indicative of a somatic disorder (Id.).

Plaintiff next argues the ALJ committed reversible error when he improperly discounted the opinions of Plaintiff's treating orthopedist, Dr. Singer, and Plaintiff's primary care physician, Dr. Dils. Plaintiff argues that, as treating physicians, Drs. Dils and Singer's opinions are entitled to controlling weight unless the opinions are not supported by the objective medical record, and unless the ALJ gives good reasons for his or her decisions. Defendant responds that the objective medical record does not support the extent of limitations recommended by Drs. Singer and Dils (DN 14 at PageID # 1432). Defendant notes that physical examination revealed reduced range of lumbar motion but also revealed that Plaintiff was neurologically intact (Id.). Moreover, Defendant contends Dr. Singer opined there was no objective support for Plaintiff's allegations of pain, and while Dr. Singer suggested the possibility of a somatic pain disorder, this opinion is not supported anywhere else in the record (Id.).

Plaintiff next argues the ALJ failed to give specific reasons for discrediting Plaintiff's subjective allegations of pain (DN 13 at PageID # 1422-23). Plaintiff argues the ALJ offered a boiler plate summation of Plaintiff's credibility, and the problem is exacerbated by the ALJ's failure to consider the alleged Somatoform disorder. Defendant responds that an ALJ's

credibility determination is entitled to great deference from this Court because the ALJ is uniquely situated to observe Plaintiff's demeanor (DN 14 at PageID # 1433). Defendant further contends that, while the ALJ did not provide extensive analysis with regard to his opinion of Plaintiff's credibility at the hearing, the decision should not be remanded because the ALJ provided substantial evidence from other portions of the record to support his credibility findings (Id. at 1434).

Next, Plaintiff contends the ALJ erred in relying on a prior RFC from a 2012 administrative decision (DN 13 at PageID # 1423-24). Specifically, Plaintiff argues the medical evidence of a bone fragment and bone-on-bone arthropathy in the L5-S1 facet joint demonstrate a substantial change in condition justifying a deviation from the prior RFC (Id. at PageID # 1423). The Defendant responds that, while the ALJ ultimately decided not to deviate from the prior RFC, he first engaged in a full review of the medical record, including the most recent diagnostic findings, treatment notes, and physician opinions (DN 14 at PageID # 1435). The Defendant argues the latest findings are consistent with the adopted RFC.

Finally, Plaintiff argues that the vocational expert cannot actually determine whether there are jobs that exist in significant numbers in the national economy that Plaintiff can perform because the vocational expert made his determination pursuant to a faulty hypothetical built on a faulty RFC. Defendant responds, in short, that the RFC was properly assessed for the reasons discussed previously, so the hypothetical was also proper.

## DISCUSSION

### A. SOMATOFORM DISORDER

The undersigned will first address Plaintiff's claim that the ALJ erred in not considering Somatoform disorder to be a severe impairment. At the second step in the sequential evaluation

7

process, Plaintiff must demonstrate he has a "severe" impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam). To satisfy this burden, Plaintiff must show he suffers from a "medically determinable" physical or mental condition that satisfies the duration requirement (20 C.F.R. §§ 404.1509, 416.909) and "significantly limits" his ability to do one or more basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii) and (c), 416.920(a)(4)(ii) and (c); Social Security Ruling 96-3p; Social Security Ruling 96-4p; Higgs, 880 F.2d at 863. Alternatively, Plaintiff must show he suffers from a combination of impairments that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii) and (c).

To satisfy the "medically determinable" requirement, Plaintiff must present objective medical evidence (i.e., signs, symptoms, and laboratory findings) that demonstrates the existence of a physical or mental impairment. 20 C.F.R. § 416.908; Social Security Ruling 96-4p, 1996 WL 374187, at *1; Social Security Ruling 96-3p, 1996 WL 374181, at *2. Thus, symptoms and subjective complaints alone are not sufficient to establish the existence of a "medically determinable" physical or mental impairment. Social Security Ruling 96-4p, 1996 WL 374187, at *1. Finally, to satisfy the "duration" requirement the impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 416.909. Again, the claimant must present objective evidence to satisfy the "duration" requirement.

Here, Plaintiff alleges error on the basis of one note in Dr. Singer's medical source statement suggesting that Somatoform disorder may be the cause of Plaintiff's exaggerated pain symptoms (Tr. 1261). But Plaintiff cannot satisfy either the medically determinable or durational requirements. A treating physician's diagnosis should receive substantial deference when considering whether a claimant has shown a severe impairment and complete deference

when that diagnosis is not contradicted. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985) (citations omitted). However, this medical source statement is only part of the evidence that the ALJ considers, and the Sixth Circuit has said in no uncertain terms that an opinion in a medical source statement unsupported by objective findings does not necessitate deference. Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001).

Because no objective testing accompanies the lone statement concerning somatic pain in Dr. Singer's opinion, Plaintiff has not satisfied the "medically determinable" requirement, and the ALJ did not err in his decision to exclude Somatoform disorder from Plaintiff's list of severe impairments. It is also worth noting that the medical source statement at issue is dated November 1, 2015 (Tr. 1257). This is mere weeks before the ALJ issued his decision in Plaintiff's case (Tr. 12). Dr. Singer's note makes no mention of how long Plaintiff has suffered from this alleged Somatoform disorder nor how long he may continue to suffer. As a result, Plaintiff has also failed to satisfy the durational requirement with objective evidence. For all these reasons, the ALJ's decision to exclude Somatoform disorder from Plaintiff's list of severe impairments is well-supported by substantial evidence. This claim is denied.

### B. DRS. SINGER AND DILS

The next issue is whether the ALJ improperly discounted the weight afforded to the medical source statements of treating physician Dr. Dils and treating orthopedist Dr. Singer. The Sixth Circuit has provided the following comprehensive explanation regarding the standards for weighing medical opinions:

> As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), *id.* § 404.1502, 404.1527(c)(1), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined

the claimant but does not have an ongoing treatment relationship (a "nontreating source"), *id.* § 404.1502, 404.1527(c)(2). In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).

The source of the opinion therefore dictates the process by which the Commissioner accords it weight. Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, *id.*, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence, *id.* § 404.1527(c)(2)-(6).

The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion. *Id.* § 404.1527(c)(2). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir.2004).

On the other hand, opinions from nontreating and nonexamining sources are never assessed for "controlling weight." The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling. 20 C.F.R. § 404.1527(c). Other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion. *Id.* § 404.1527(c)(6).

Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 375-76 (6th Cir. 2013). In this instance, the commissioner does not dispute that Drs. Singer and Dils were treating physicians. Thus, the

issue becomes whether the ALJ offered good reasons for his decision to discount their opinions. In order to constitute "good reasons," the explanation offered by the ALJ must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011) (quoting SSR 96-2p). The purpose for this rule is to ensure a claimant understands how and why the Commissioner reached the decision it did. A claimant could be understandably bewildered to be informed by their doctor that they are disabled, only to have this assessment contradicted by an administrative bureaucracy. *See* Wilson, 378 F.3d at 544.

Beginning with Dr. Dils, the ALJ in this case explained in detail why he discounted the treating source opinion. For example, the ALJ noted that where the medical source statement asked for "clinical findings and objective signs" to support his opinion, Dr. Dils wrote nothing (Tr. 23). The ALJ noted that Dr. Dils restrictions are inconsistent with the evidence of record, including an MRI of the lumbar spine (Id.). Finally, the ALJ identified inconsistencies between Dr. Dils opinion and the neurologist, the consultative examiner, and office notes from Dr. Dils own treatment of Plaintiff (Id.). It is clear to the undersigned what weight the ALJ assigned Dr. Dils' opinion, and it is clear why he gave the opinion little weight. The ALJ's assessment is therefore supported by substantial evidence and comports with applicable law.

With regard to Dr. Singer, the ALJ offered similarly good reasons for discounting the weight afforded his opinion. For instance, under the heading marked "clinical findings and objective signs," Dr. Singer wrote "severe pain exaggeration and response to minimal stimuli, no relief with variety of treatment" (Id.). The ALJ further pointed out that Dr. Singer stated that the source of Plaintiff's pain is "not objectively notable" (Id.). The ALJ noted that Dr. Singer

referred to potential somatic pain symptoms, but provided no evidence, objective or otherwise, for this opinion (Id.). Again, the ALJ offered good reasons for discounting Dr. Singer's opinion. His decision was supported by substantial evidence and comports with applicable law. This claim is therefore denied.

### C. PLAINTIFF'S SUBJECTIVE ALLEGATIONS OF PAIN

Plaintiff's next argument is that the ALJ erred by discounting Plaintiff's subjective allegations of pain. In assessing a claimant's residual functional capacity, the Administrative Law Judge must necessarily consider the claimant's subjective allegations and make credibility findings. 20 C.F.R. §§ 404.1529, 416.929; Social Security Ruling 96-7p. A claimant's statement that they are experiencing pain or other symptoms will not, taken alone, establish that they are disabled; there must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain and/or other symptoms alleged. 20 C.F.R. §§ 404.1529(a), 416.929(a). In determining whether a claimant suffers from debilitating pain and/or other symptoms, the two-part test set forth in Duncan v. Sec'y of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986), applies. First the Administrative Law Judge must examine whether there is objective medical evidence of an underlying medical condition. If there is, then the Administrative Law Judge must determine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain." Id. When, as in this case, the ALJ believes the reported pain and/or other symptoms suggest an impairment of greater severity than can be shown by objective medical evidence, the ALJ will consider other information and factors which may be relevant to the degree of pain alleged. 20 C.F.R. §§

404.1529(c)(3), 416.929(c)(3). These factors include, among others, the claimant's daily activity (20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i)) and inconsistencies in the claimant's testimony and the medical evidence (20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4)).

In this case, Plaintiff takes issue with the ALJ's credibility finding, but the undersigned finds it well-supported. The ALJ noted that Plaintiff's use of a cane is not credible because multiple doctors described his gait as normal or noted he could walk without difficulty (Tr. 21). Additionally, the ALJ noted a visit with Dr. Singer wherein Dr. Singer described Plaintiff's "general appearance as one of exaggerated pain, . . . but he remains neurologically intact in both lower extremities" (Id.). Additionally, the ALJ pointed out that Plaintiff was suspected of drug diversion when he came up thirty pills short at an appointment and was subsequently not permitted to continue in a pain treatment program (Id.). Moreover, The ALJ is in a unique position to judge the credibility of a claimant, and this Court is reluctant to disturb these findings. See Gooch v. Sec'y of Health and Human Servs., 833 F.2d 589, 592 (6th Cir. 1987). The ALJ supported his credibility determination with substantial evidence, and this claim is denied.

### D. THE PRIOR RFC

The next issue is whether the ALJ erred in adopting the RFC from a prior ALJ's decision. In Drummond v. Comm'r of Soc. Sec., the Sixth Circuit held the doctrine of *res judicata* applies to the residual functional capacity finding in a final decision of the Commissioner. 126 F.3d 837, 842-43 (6th Cir. 1997). For this rule to apply, there must be (1) a final decision of the Commissioner; (2) an application for benefits addressing a later unadjudicated period of time; and (3) an inability by the Commissioner to show the claimant's condition has improved. Id. The Social Security Administration subsequently issued Acquiescence Ruling 98-4(6), directing Administrative Law Judges adjudicating a claim for a subsequent unadjudicated period to adopt

13

the residual functional capacity finding in an earlier final decision unless there "is new and material evidence relating to such finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding."

Here, while the ALJ eventually adopted the prior RFC, it was not without a thorough review of new evidence and a reasoned determination that the Plaintiff's condition has not materially changed (Tr. 20). For instance, the ALJ noted an MRI from December, 2013 showing only mild to moderate abnormality (Id.). And, the ALJ added carpal tunnel syndrome to Plaintiff's list of severe impairments based on the results of an EMG study from May of 2012 (Tr. 17). The ALJ ultimately concluded that the new evidence did not materially alter the prior RFC. This conclusion is supported by substantial evidence and comports with applicable law. This claim is therefore denied.

## E. THE HYPOTHETICAL QUESTION

The final issue is whether the ALJ's hypothetical question reflected an inaccurate RFC which would thereby preclude the vocational expert from making a true statement regarding whether there exist jobs in significant numbers in the national economy that Plaintiff can perform. Because the undersigned has reviewed the ALJ's RFC finding and found no issue with is conclusions, this claim is necessarily without merit and is therefore denied.

## **ORDER**

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**. **IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

Copies: Counsel